ANNE K. EDWARDS (SBN 110424)
**SMITH, GAMBRELL & RUSSELL, LLP**
444 South Flower Street Suite 1700
Los Angeles, California 90071
Telephone:  213 358-7200
Facsimile:  213 358-7300
Email:  aedwards@sgrlaw.com

Attorneys for Plaintiff
STEVEN CODY REYNOLDS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| STEVEN CODY REYNOLDS,<br><br>                    Plaintiff,<br><br>        vs.<br><br><br>BINANCE HOLDINGS LTD.,<br><br>                    Defendant. | Case No.<br><br>**COMPLAINT**<br><br><br><br>**Demand For Jury Trial** |

Plaintiff Steven Cody Reynolds, as and for his Complaint against Defendant Binance Holdings Ltd., hereby alleges as follows:

## PRELIMINARY STATEMENT

1.      Steven Cody Reynolds ("Reynolds" or "Plaintiff") is a cryptocurrency investor and provides consulting and advisory services to companies in the digital currency industry.

2.      Reynolds maintained a digital currency account with Binance Holdings Ltd. ("Binance" or "Defendant"), a global cryptocurrency exchange that provides a platform for buying, selling and storing digital currencies.

3.    Reynolds first used Binance's exchange to acquire BNB tokens, also known as Binance Coin, a cryptocurrency issued by Binance in its Initial Coin Offering ("ICO") in June 2017.

4.    One month later, in or around July 2017, Reynolds was retained by Binance to support Binance's online communications with English speaking customers.  In this role, Reynolds was responsible for public facing community management, managing media channels, and communicating with English speaking customers primarily from the United States.

5.    Between July 2017 and December 2017, Binance compensated Reynolds for his services in the form of BNB tokens, which Reynolds stored in his Binance account.

6.    In addition to his compensation, Reynolds continued to purchase BNB tokens and acquire other digital currencies using the Binance platform, and stored these cryptocurrencies in his Binance account as well.

7.    In December 2017, Reynolds and Binance agreed that Reynolds would stop providing services to Binance.  The separation was amicable at the time, and Reynolds continued to use the Binance platform to buy and sell cryptocurrencies and continued to store digital currencies in his Binance account.

8.    Several weeks later, in January 2018, Binance contacted Reynolds in regards to an online group chat that Reynolds administered on Telegram Messenger (an independent app where users can participate in online public group chats).  Binance requested that Reynolds delete the group chat.  However, the app settings did not permit chats to be deleted once opened to the public.

9.    Days later, Binance contacted Reynolds again and requested that he remove any reference to Binance in the group chat and change the chat's name.  Reynolds complied with this request.

10.    Later the same day, however, Reynolds was contacted by Binance's CEO, Changpeng Zhao, who demanded that Reynolds delete the chat or remove all of the

SMITH, GAMBRELL & RUSSELL, LLP
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: 213 358-7200

2
**COMPLAINT**

participants.  Reynolds initially resisted but was immediately threatened by Zhao with legal and financial damages unless he complied.  Then, within minutes, Binance carried out Zhao's threats. Without Reynolds' consent, Binance unilaterally lowered Reynolds' withdrawal limit in his account to zero.  Reynolds' account was effectively frozen, as he was restricted from withdrawing any of his assets.

11.    Binance then locked Reynolds out of his account entirely.  He could not log in using his username and password.

12.    Reynolds attempted to restore his account through Binance customer service, but his access was restricted.  Reynolds could no longer access his account, and he could not access his digital currency assets stored thereon.

13.    At the time, Reynolds' Binance account was holding approximately $285,000 worth of digital currencies.

14.    Months later, on or about March 31, 2018, Reynolds was able to regain access to his Binance account.  However, his account balance was zero.

15.    Binance had, without Reynolds' consent or authorization, wrongfully confiscated all of the digital assets that Reynolds owned and stored on the Binance platform.

16.    If Reynolds' assets were not confiscated by Binance, Reynolds could have sold the digital assets for US Dollars in an amount up to $337,500 over the subsequent months.

17.    As a currency exchange doing business in the United States, Binance has a duty to its customers to safely and securely maintain their digital assets, and not to unilaterally freeze and confiscate customer property.

18.    United States customers of cryptocurrency exchanges doing business in the United States should not have to fear that the exchange could unilaterally and without authorization seize and confiscate their assets stored thereon.

19.    Reynolds brings this action against Binance seeking monetary and punitive damages for this unlawful seizure and confiscation of property.

SMITH, GAMBRELL & RUSSELL, LLP
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: 213 358-7200

## PARTIES

20.   Plaintiff Reynolds is and was at the time of the filing of this complaint a citizen of the United States and a resident of the State of Oregon.

21.   Upon information and belief, Defendant Binance is a Cayman Islands limited company with headquarters in the Republic of Malta, and maintains a principal place of business in San Francisco, California through its subsidiary Binance US.

## JURISDICTION AND VENUE

22.   This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy, as alleged further herein, exceeds the jurisdictional minimum of $75,000.

23.   This Court has personal jurisdiction over Defendant Binance for the foregoing reasons:  Commencing in 2017, Binance purposefully directed its activities at residents of this forum by making its website, Binance.com, available to citizens of this state and providing a platform for United States customers to buy, sell and store digital assets on their Binance user account. Upon information and belief, in 2018, approximately 38% of Binance customers worldwide were located in the United States, the largest proportion by country. After the formation of Binance US in September 2019, Binance continued to direct its activities to residents of this forum through Binance US.  Upon information and belief, Binance controls Binance US and uses Binance US as an agent and instrumentality to continue to serve Binance's United States customers, to conduct Binance's affairs in the United States, to ensure compliance with United States laws and regulations, and to serve as Binance's principal physical presence in the United States.  Upon information and belief, Binance and Binance US operate on the same website, use the same exchange platform, the same matching engine and the same wallet technologies.  Upon information and belief, Binance US is Binance's alter ego subsidiary as there is such a unity of interest, ownership and control that the separate personalities of the two

entities no longer exist. Binance US is registered to do business in the State of California, and is registered as a money services business with the United States Department of the Treasury, Financial Crimes Enforcement Network, with an address of Letterman Digital Arts Center, One Letterman Drive, Building C, Suite C, San Francisco, CA.  Upon information and belief, Binance, through Binance US, has significant operations, employees and physical presence in California, unlike in Malta where Binance is purportedly headquartered, or the Cayman Islands where it is purportedly incorporated.  Upon information and belief, Binance continues to enter into thousands of transactions annually with California-based individuals and businesses.  As such, Binance has continuous and systematic contacts with California, and purposefully avails itself of the benefits of participation in the California marketplace sufficient to render the assumption of general personal jurisdiction by this Honorable Court consistent with traditional notions of fair play and substantial justice.

24.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this district.

## FACTUAL BACKGROUND

### A.    Plaintiff Reynolds

25.    Plaintiff Reynolds is an experienced investor in cryptocurrencies.  He is also a founder of start-up companies in the cryptocurrency industry, and provides consulting and advisory services to cryptocurrency-related businesses.

26.    Reynolds served in the United States Army after high school and attended the United Stated Military Academy at West Point in New York.

27.    Following his service with the United States military, Reynolds developed a keen interest in cryptocurrencies and since then has worked in various capacities in the cryptocurrency industry at home and abroad.

28.    In addition to investing in digital currencies, Reynolds' experience includes serving on an advisory board and providing freelance services to companies

**COMPLAINT**

SMITH, GAMBRELL & RUSSELL, LLP
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: 213 358-7200

in the cryptocurrency industry, including business development, communications, public relations, customer service, crisis management, and fund raising.

29.    Reynolds has also been involved in politics.  In 2012, Reynolds ran for election to the United States House of Representatives to represent the 1st Congressional District of Oregon as a member of the Progressive Party.  Reynolds ran again in 2014 to represent the 1st Congressional District of Oregon as a member of the Green Party.  In 2016, Reynolds won the primary to be the candidate for the Independent Party to the United States Senate seat from Oregon.  In the 2016 election for the United States Senate seat from Oregon, Reynolds gained over 59,000 votes in the general election as the candidate for the Independent Party.

**B.    Defendant Binance**

30.    Defendant Binance is a cryptocurrency exchange that provides a platform for customers to buy, sell and store cryptocurrencies.

31.    Upon information and belief, the company was founded in China in 2017 by Changpeng Zhao ("Zhao"), who currently serves as its CEO.

32.    Upon information and belief, the company is incorporated in the Cayman Islands.

33.    Upon information and belief, the company moved headquarters from China to Japan in September 2017, and from Japan to Malta in March 2018.

34.    Upon information and belief, Binance does not maintain a significant operating business in Malta or the Cayman Islands; rather, Binance runs a "decentralized operation," and Binance teams are based where Binance operates regulated businesses, such as Binance US.

35.    In September 2019, Binance opened Binance US in San Francisco, California.  Binance US is licensed to do business in the State of California, and was registered as a money services business with the U.S. Department of the Treasury, Financial Crimes Enforcement Network, in December 2019.

SMITH, GAMBRELL & RUSSELL, LLP
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: 213 358-7200

SMITH, GAMBRELL & RUSSELL, LLP
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: 213 358-7200

36.   Upon information and belief, in 2018 approximately 38% of Binance customers were located in the United States.

37.   Upon information and belief, Binance stopped serving United States customers in or around June 2019, but resumed in or around September 2019 after launching Binance US.

38.   Upon information and belief, in 2019 Binance had an average daily trading volume of $2.85 Billion, serving more than 15 million customers around the world.

39.   In addition to offering a cryptocurrency trading platform, Binance created a cryptocurrency token called BNB, also known as Binance Coin.  As set forth on Binance's website, BNB "powers the Binance Ecosystem. As the native coin of Binance Chain, BNB has multiple use cases: fueling transactions on the Chain, paying for transaction fees on Binance Exchange, making in-store payments, and many more."

40.   BNB was created by Binance in 2017.  It was first issued and launched during an Initial Coin Offering ("ICO") crowdfunding event, which took place between June 26 and July 3, 2017.

**C.   Reynolds Purchases BNB Tokens in Binance's Initial Coin Offering**

41.   During the June 2017 Binance ICO, Reynolds purchased BNB using the Binance platform.

42.   The purchase was made by Reynolds while he was in the State of Oregon.

43.   After the ICO, Reynolds continued to purchase BNB and continued to use the Binance platform to purchase and store other digital currencies.

**D.   Reynolds is Retained by Binance to Provide Customer-Support Services to United States Customers, and is Compensated in BNB Tokens.**

44.   In or around late July 2017, following Binance's ICO, Reynolds was retained to provide services to Binance.

45.     Specifically, Reynolds was retained to support online communications with English-speaking users of the Binance platform.  In this role, Reynolds was responsible for public facing community management, managing media channels, and communicating with English speaking customers primarily from the United States.

46.     Reynolds was asked to provide such service to Binance directly by Binance's CEO, Changpeng Zhao.  Zhao and Reynolds met remotely in July 2017 in an online Slack channel.  Slack is an independent company that provides online public chat rooms ("channels").  Zhao and Reynolds began communicating in the Slack channel, and Zhao asked Reynolds, who was experienced and well versed in cryptocurrencies, to provide the above-mentioned communications services for Binance.

47.     An agreement was reached whereby Reynolds would be compensated with BNB tokens in the amount equivalent to $3K per month, and would be allocated BNB tokens as a Binance team member.

48.     From June 2017 to December 2017, Reynolds provided said services to Binance and was compensated for his service in the form of BNB tokens, which he kept stored in his Binance account.

49.     During the time that Reynolds provided services to Binance, Reynolds would work up to seven days a week, often up to 20 hours a day, answering questions and providing various customer support services on Binance's behalf.

50.     Reynolds also used the Binance platform himself as a customer to purchase, sell and hold other digital currencies.

51.     In December 2017, Reynolds and Binance agreed that Reynolds would stop providing services to Binance.

52.     The separation was amicable at the time, and Reynolds continued to use the Binance platform to hold and manage his cryptocurrency assets.

SMITH, GAMBRELL & RUSSELL, LLP
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: 213 358-7200

**E.   Binance Confiscates Reynolds' Digital Assets in his Binance Account.**

53.   Several weeks after Reynolds ceased providing service to Binance, in or around January 2018, Binance reached out to Reynolds in regards to a public online group chat that Reynolds administered.

54.   The group chat was hosted by an app called Telegram Messenger. Telegram Messenger is not a part of the Binance platform.  It is an independent app that allows users to participate in online public group chats.

55.   Reynolds was asked to delete the group chat.  However, the Telegram Messenger app settings did not permit chats to be deleted once opened to the public

56.   Days later, Binance contacted Reynolds again and requested that he remove any and all reference to Binance in the Telegram Messenger group chat and to change the group chat's name.  Reynolds agreed.  Reynolds removed all reference to Binance and changed the name of the group chat to "Steve's Crypto Corner."

57.   Later that same day, Reynolds was contacted directly by Binance's CEO, Changpeng Zhao, who demanded that Reynolds delete the group chat (which the settings did not allow) or remove all of the participants.

58.   Reynolds initially resisted this request.  Zhao, however, the billionaire CEO of Binance with far superior financial resources, reacted by immediately threatening Reynolds with severe legal and financial consequences unless Reynolds complied with his demands.

59.   Then, within minutes of Zhao's threats, Binance proceeded to carry them out.  In an extreme act of bullying and retaliation, Binance – without Reynolds' consent – unilaterally lowered Reynolds' withdrawal limit in his Binance account to zero, meaning that Reynolds could not withdraw any of the digital assets in his account.  His account was frozen.

60.   Then, again without Reynolds' consent, Binance blocked Reynolds' access to his account entirely.  Reynolds could not log in using his username and

SMITH, GAMBRELL & RUSSELL, LLP
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: 213 358-7200

password.  He could not gain access to his digital assets held on the Binance platform. Binance had shut Reynolds out and locked him away from his property.

61.  At the time, Reynolds' Binance account was holding approximately $285,000 worth of digital currencies.

62.  Months later, on or about March 31, 2018, Reynolds regained access to his account.  However, Reynolds' assets were no longer there.  His account showed a balance of zero.

63.  Several months after that, in or around July 2018, Reynolds met Zhao face to face at the TechCrunch technology conference being held in Zug, Switzerland. Reynolds asked Zhao to return his confiscated property, but Zhao refused.

64.  Binance did not have authorization from Reynolds to freeze, seize and confiscate his digital assets.

65.  Reynolds' digital assets in his Binance account were unlawfully confiscated by Binance.

66.  If Reynolds' assets were not confiscated by Binance, Reynolds could have sold the digital assets for US Dollars in an amount up to $337,500 over the subsequent months.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Conversion)

67.  Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

68.  Plaintiff maintained a cryptocurrency account with Binance and deposited digital assets on the Binance platform.

SMITH, GAMBRELL & RUSSELL, LLP
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: 213 358-7200

69.   Defendant Binance, without permission, authorization or consent of the Plaintiff, wrongfully seized and confiscated the digital assets deposited by, and belonging to, Plaintiff Reynolds.

70.   Defendant's confiscation of Plaintiff's cryptocurrency and refusal to return the funds to Plaintiff are wrongful acts and omissions.

71.   Plaintiff was, and is, entitled to possession of the deposited funds that Defendant has wrongfully converted.

72.   As a direct and proximate result of Defendant's wrongful acts and omissions, Reynolds has been deprived of his right to use his property, causing damage to Plaintiff in an amount to be determined at trial but believed to be not less than $337,500.

73.   Defendant's actions were knowing, willful, intentional and malicious, and justify the award of punitive damages.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

74.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

75.   Plaintiff provided services to Binance in exchange for compensation in Binance Coin which he stored on his Binance account, and he also used Binance's exchange platform to acquire additional cryptocurrency which he stored on his Binance account as well.

76.   Defendant wrongfully seized and confiscated all of Reynolds' digital assets that were stored in his Binance account.

77.   The circumstances of Defendant's enrichment are such that equity and good conscience require Defendant to make restitution to Plaintiff.

### THIRD CAUSE OF ACTION

### (Negligence)

78.   Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

79.   Defendant owed Plaintiff a duty to use reasonable care in performing its duties as an exchange and depository of Plaintiff's cryptocurrency account, including but not limited to the duty to: (1) maintain Plaintiff's account, (2) ensure that no unauthorized transfers or withdrawals from Plaintiff's account were implemented, and (3) comply with all applicable registration and reported requirements under state and federal law.

80.   Defendant has breached those duties by failing to perform its obligations, including by failing to ensure that no unauthorized transfers or withdrawals from Plaintiff's Binance account were implemented, prevent misappropriation in Plaintiff's Binance account, and failing to comply with all applicable requirements under state and federal law.

81.   As a direct and proximate result of Defendant's conduct, Reynolds has been damaged in an amount to be determined at trial but believed to be not less than $337,500.

### JURY DEMAND

82.   Plaintiff hereby demands a trial by jury on all issues triable by a jury in this case.

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

(a)   Awarding Plaintiff damages for all injuries suffered as a result of Defendants' wrongdoing in an amount to be determined at trial but believed to be not less than $337,500;

SMITH, GAMBRELL & RUSSELL, LLP
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: 213 358-7200

(b)    Awarding punitive damages for Defendant's knowing, willful, intentional and malicious conduct;

(c)    Awarding Plaintiff pre-judgment and post-judgment interest;

(d)    Awarding Plaintiff reasonable attorneys' fees, expenses, and the costs of bringing this action; and

(e)    All such other and further relief as the Court deems necessary, just and proper.

DATED: March 27, 2020                    SMITH, GAMBRELL & RUSSELL, LLP


By:    _/s/ Anne K. Edwards_____
        Anne K. Edwards
        Attorneys for
        STEVEN CODY REYNOLDS

SMITH, GAMBRELL & RUSSELL, LLP
444 SOUTH FLOWER STREET, SUITE 1700
LOS ANGELES, CALIFORNIA 90071
TELEPHONE: 213 358-7200

13
**COMPLAINT**

SGR/22521717.3