KEESAL, YOUNG & LOGAN
Peter R. Boutin, SBN 65261
Christopher A. Stecher, SBN 215329
450 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 398-6000
Facsimile: (415) 981-0136
peter.boutin@kyl.com
christopher.stecher@kyl.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Theodore V. Wells (*pro hac vice pending*)
Karen R. King (*pro hac vice pending*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
twells@paulweiss.com
kking@paulweiss.com

Roberto J. Gonzalez (*pro hac vice pending*)
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
rgonzalez@paulweiss.com

*Attorneys for Specially Appearing*
*Defendant Binance Holdings Ltd.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN CODY REYNOLDS,<br><br>                              Plaintiff,<br><br>        v.<br><br>BINANCE HOLDINGS LTD.,<br><br>                              Defendant. | Case No. 3:20-cv-02117-JSC<br><br>**SPECIALLY APPEARING DEFENDANT BINANCE HOLDINGS LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION**<br><br>Date:   July 23, 2020<br>Time:   9:00 a.m.<br>Place:  Courtroom E |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      PLEASE TAKE NOTICE that, on July 23, 2020 at 9:00 a.m., or as soon thereafter as

3   counsel may be heard in Courtroom E of the U.S. District Court for the Northern District of

4   California, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable

5   Jacqueline Scott Corley, Specially Appearing Defendant Binance Holdings Ltd. ("Binance") will

6   move, and hereby moves, for an Order dismissing Plaintiff's Complaint pursuant to Federal Rule

7   of Civil Procedure 12(b)(2).  Binance neither consents nor submits to the jurisdiction of this

8   Court and appears for the limited purpose of contesting jurisdiction.  This motion is based on this

9   Notice of Motion, the accompanying Memorandum of Law, the Declaration of Samuel Lim, and

10   all other matters properly before this Court.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................. i

ISSUE PRESENTED ...........................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...................................................................................................................2

I.      The Parties ..............................................................................................................2

II.     The Underlying Dispute Between Reynolds and Binance...................................2

III.    Binance's Relationship to BAM ...........................................................................3

ARGUMENT .........................................................................................................................4

I.      There is No General Personal Jurisdiction Over Binance. ................................4

II.     There is No Specific Personal Jurisdiction Over Binance. ...............................6

III.    Plaintiff's Alter-Ego Theory Fails. ....................................................................10

        A.      Unity-of-Interest Prong .........................................................................11

        B.      Fraud-or-Injustice Prong ......................................................................14

CONCLUSION...................................................................................................................14

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

**CASES**

3

4
*Adobe Sys. Inc.* v. *Trinity Software Distrib.*,
   No. C 12–1614 SI, 2012 WL 3763643 (N.D. Cal. Aug. 29, 2012) ..........................................5

5

6
*Apple Inc.* v. *Allan Associates Ltd.*,
   No. 5:19-cv-8372-EJD, 2020 WL 1492665 (N.D. Cal. Mar. 27, 2020) ..................................13

7
*Asahi Metal Indus. Co., Ltd.* v. *Superior Court of California, Solano Cty.*,
   480 U.S. 102 (1987).................................................................................................................9

8

9
*Bancroft & Masters, Inc.* v. *Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ..........................................................................................5, 12

10
*Bristol-Myers Squibb Co.* v. *Superior Court of California, San Francisco Cty.*,
   137 S. Ct. 1773 (2017)..............................................................................................................7

11

12
*Corcoran* v. *CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) ...................................................................................13

13

14
*Cybersell, Inc.* v. *Cybersell, Inc.*,
   130 F.3d 414 (9th Cir. 1997) ...................................................................................................7

15

16
*Daimler AG* v. *Bauman*,
   571 U.S. 117 (2014).................................................................................................................5

17
*DFSB Kollective Co.* v. *Bourne*,
   897 F. Supp. 2d 871 (N.D. Cal. 2012) .....................................................................................7

18

19
*Doe* v. *Geller*,
   533 F. Supp. 2d 996 (N.D. Cal. 2008) .....................................................................................9

20
*Doe* v. *Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ................................................................................................10

21

22
*Gardner* v. *Starkist Co.*,
   418 F. Supp. 3d 443 (N.D. Cal. 2019) ................................................................11, 12, 13, 14

23

24
*Harrell* v. *City of Gilroy*,
   No. 17-CV-05204-LHK, 2019 WL 452039 (N.D. Cal. Feb. 5, 2019)......................................1

25
*Int'l Shoe Co.* v. *State of Wash., Office of Unemployment Comp. & Placement*,
   326 U.S. 310 (1945).................................................................................................................9

26

27
*Kramer Motors, Inc.* v. *British Leyland, Ltd.*,
   628 F.2d 1175 (9th Cir.1980) ................................................................................................12

28

*Martinez* v. *Aero Caribbean*,
   764 F.3d 1062 (9th Cir. 2014) ................................................................................4

*Matus* v. *Premium Nutraceuticals, LLC*,
   No. EDCV 15-01851 DDP (DTBx), 2016 WL 3078745 (C.D. Cal. 2016)...............7

*Mehr* v. *Féderation Internationale de Football Assoc.*,
   115 F. Supp. 3d 1035 (N.D. Cal. 2015) ...................................................................8

*MH Pillars Ltd.* v. *Realini*,
   No. 15-CV-1383-PJH, 2017 WL 916414 (N.D. Cal. Mar. 8, 2017).......................14

*Morrill* v. *Scott Fin. Corp.*,
   873 F.3d 1136 (9th Cir. 2017) ................................................................................6

*Neilson* v. *Union Bank of California, N.A.*,
   290 F. Supp. 2d 1101 (N.D. Cal. 2003) .................................................................10

*Newirth* v. *Aegis Senior Communities, LLC*,
   931 F.3d 935 (9th Cir. 2019) ..................................................................................1

*Pebble Beach Co.* v. *Caddy*,
   453 F.3d 1151 (9th Cir. 2006) ................................................................................6

*Picot* v. *Weston*,
   780 F.3d 1206 (9th Cir. 2015) .........................................................................6, 7, 8

*Ranza* v. *Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) .............................................................5, 10, 12, 13

*Sandoval* v. *Ali*,
   34 F. Supp. 3d 1031 (N.D. Cal. 2014) ..................................................................11

*Schwarzenegger* v. *Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .............................................................................5, 6

*Shaw* v. *Vircurex*,
   No. 18-cv-00067-PAB-SKC, 2019 WL 2636271 (D. Colo. Feb. 21, 2019) ...........8

*Walden* v. *Fiore*,
   571 U.S. 277 (2014).............................................................................................6, 8

*White* v. *Sharabati*,
   C.A. No. N18C-02-170 WCC, 2019 WL 2897913 (Del. Super. Ct. July 2,
   2019) ......................................................................................................................9

*Williams* v. *Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ..................................................................... passim

*World-Wide Volkswagen Corp.* v. *Woodson*,
   444 U.S. 286 (1980).................................................................................................9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATUTES

Cal. Code of Civ. Proc. § 410.10 ...................................................................................................4

OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(2)...................................................................................................1, 2, 4

Fed. R. Civ. P. 12(g)(2)...........................................................................................................2

## ISSUE PRESENTED

Whether Plaintiff's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over Binance.

## MEMORANDUM OF POINTS AND AUTHORITIES

Binance respectfully moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the Complaint in its entirety for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

This is a case brought by a non-Californian plaintiff, against a non-Californian company, regarding conduct that has no connection to California.  Plaintiff, a self-identified Oregon resident, brings this action against Binance, a cryptocurrency exchange organized under the laws of the Cayman Islands, alleging claims of conversion, unjust enrichment, and negligence relating to the seizure of certain funds in his account on the Binance platform.  The Complaint should be dismissed because the Court lacks personal jurisdiction over Binance.

Binance is a foreign corporation with no offices, operations, or physical presence in California.  Plaintiff's alleged injuries do not arise from any forum-related activity, and the only proffered basis for jurisdiction in California are conclusory allegations about a purported alter-ego relationship between Binance and the separate U.S. company, BAM Trading Services ("BAM").  BAM is neither an agent nor subsidiary of Binance, much less its alter-ego.  Indeed, BAM did not even exist in 2018 when the events at issue in the Complaint took place.  Given these facts, this case plainly does not belong in California.  For the reasons set forth below, Plaintiff's Complaint should be dismissed in its entirety.[1]

---

[1]   Binance's Terms of Use not only authorize Binance to suspend accounts based on misconduct, but also contain an arbitration provision requiring all disputes to be submitted to binding international arbitration. (Binance's current Terms of Use are available at https://www.binance.com/en/terms.) Binance reserves its rights to enforce the arbitration clause applicable to Plaintiff on *forum non conveniens* grounds and/or to move to compel arbitration under the Federal Arbitration Act should this Court conclude that it has personal jurisdiction over Binance.  *See Newirth* v. *Aegis Senior Communities, LLC*, 931 F.3d 935, 941–42 (9th Cir. 2019) (parties do not waive the right to compel arbitration "when they engage in litigation activities that do not evince a decision to take advantage of the judicial forum," including filing a motion to dismiss that does not address the merits of the case). Binance also reserves its rights to seek dismissal of the Complaint for failure to state a claim upon which relief could be granted. *See Harrell* v. *City of Gilroy*, No. 17-CV-05204-LHK, 2019 WL 452039, at \*8 (N.D. Cal. Feb. 5, 2019) ("Thus, the Ninth Circuit affirmed that

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## BACKGROUND

### I.    THE PARTIES

Binance is a digital currency exchange founded in 2017 and organized under the laws of the Cayman Islands.  (Lim Decl. ¶ 2.)[2]  A "digital currency" or "cryptocurrency" is a digital asset designed to act as a medium of exchange, like a traditional fiat currency such as the dollar, euro, or yen, but privately issued.  Binance provides an online exchange platform allowing its users to buy, sell, or trade various digital currencies, and a digital wallet where users can store their cryptocurrencies.  (Compl. ¶ 30; Lim Decl. ¶ 3.)   Binance is not registered to do business in California, and maintains (i) no office, mailing address, or subsidiaries in California; (ii) no books and records in California; and (iii) no agent for service of process in California.  (Lim Decl. ¶¶ 4–12.)

Plaintiff Steven Cody Reynolds, a resident of Oregon, provides consulting and advisory services to cryptocurrency businesses.  (Compl. ¶¶ 20, 25.)  Between 2012 and 2016, Plaintiff pursued a career in politics, running unsuccessfully to represent Oregon in the U.S. House of Representatives and the U.S. Senate.  (Compl ¶ 29.)   As alleged, in 2017, Plaintiff made cryptocurrency purchases on Binance's platform while he was residing in Oregon.  (Compl ¶¶ 41–42.)

### II.    THE UNDERLYING DISPUTE BETWEEN REYNOLDS AND BINANCE

According to the Complaint, Plaintiff was engaged by Binance as a consultant in July 2017 to set up and moderate an English-speaking group chat on Telegram for Binance users.  (Compl. ¶ 45.)    A few months later, Plaintiff separated from the company.  (Compl. ¶ 51.)  Disputes subsequently arose when he refused to cede control of the group chat.  Specifically, in January 2018, after Plaintiff ceased providing any support services, Binance requested that Plaintiff delete the group chat that he administered on behalf of Binance.  (Compl. ¶ 55.)

although Rule 12(g)(2) facially bars successive Rule 12(b)(6) motions, a district court has discretion to consider a successive Rule 12(b)(6) motion if the motion does not prejudice the plaintiff and expedites resolution of the case.").

[2]    Citations in the form of "Lim Decl." refer to the Declaration of Samuel Lim in Support of Specially Appearing Defendant Binance Holdings Ltd.'s Notice of Motion and Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, dated June 18, 2020.

1   Plaintiff "resisted" Binance's requests to transfer control of the group chat or remove its users.

2   (Compl. ¶ 58.)   Over two years later, Reynolds filed this lawsuit alleging that Binance

3   improperly confiscated his cryptocurrency account after his continued refusal to agree to

4   Binance's requests.  (Compl. ¶¶ 65–66.)  Notably, none of the participants or events at issue—

5   the consulting arrangement, Plaintiff's support services, Plaintiff's account, the purported

6   suspension of Plaintiff's account, or the location of either Plaintiff or Binance—are alleged to

7   have any connection to California.

8        Plaintiff asserts three claims for relief: (i) conversion with respect to the alleged

9   misappropriation of cryptocurrency, which he allegedly could have sold "in an amount up to

10  $337,500 over the subsequent months" (Compl. ¶¶ 16, 67–73); (ii) unjust enrichment based on

11  the same alleged misappropriation (Compl. ¶¶ 74–77); and (iii) negligence on the theory that

12  Binance "owed Plaintiff a duty to use reasonable care" and "fail[ed] to ensure that no

13  unauthorized transfers or withdrawals from Plaintiff's Binance account were implemented."

14  (Compl. ¶¶ 79–81.)

15  **III.   BINANCE'S RELATIONSHIP TO BAM**

16       The Complaint alleges that BAM (doing business as Binance US) is, "[u]pon information

17  and belief, . . . Binance's alter ego subsidiary as there is such a unity of interest, ownership and

18  control that the separate personalities of the two entities no longer exist."   (Compl. ¶ 23.)

19  Contrary to Plaintiff's allegations, however, BAM is a U.S. cryptocurrency exchange that

20  operates independently of Binance.  (Lim Decl. ¶¶ 14–24.)  Binance does not have a direct or

21  indirect ownership interest in BAM.  (Lim Decl. ¶ 14.)  Although it operates under the name

22  "Binance US," BAM is neither an agent nor subsidiary of Binance.  (Lim Decl. ¶¶ 14, 21.)  BAM

23  is a separate legal entity that licenses certain technologies from Binance as well as the name

24  "Binance" in the course of operating its own cryptocurrency exchange.  (Lim Decl. ¶¶ 14, 17.)

25  Binance US was launched in 2019, long after the events alleged in the Complaint took place.

26  (Lim Decl. ¶ 15.)  Binance does not exercise control over BAM's day-to-day operations and

27  affairs.  (Lim Decl. ¶ 21.)  As an independent licensee, BAM is not entitled to act on behalf of

28  Binance.  (Lim Decl. ¶ 21.)

## ARGUMENT

The Complaint should be dismissed for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Plaintiff bears the burden of establishing a *prima facie* showing of personal jurisdiction.  *See Martinez* v. *Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).  Here, the Complaint is facially deficient.  Plaintiff does not allege facts that come close to establishing that Binance is "essentially at home" in California or has engaged in the "purposeful direction" or "availment" necessary to support either general or specific jurisdiction. Furthermore, none of the events at issue—from Plaintiff's initial purchase of cryptocurrency using Binance's platform, to his performance of consulting services, to the purported suspension of his account—are alleged to have occurred in California.  With no plausible basis for personal jurisdiction over Binance itself, Plaintiff makes the conclusory assertion that BAM, a California company, is the alter-ego subsidiary of Binance, but the Complaint does not include allegations which would establish unity of interest and ownership.

Although the Complaint fails on its face, for avoidance of doubt, the accompanying declaration of Samuel Lim sets forth certain core facts that confirm the lack of jurisdiction over Binance. Among other things, Binance is a foreign corporation organized under the laws of the Cayman Islands (Lim Decl. ¶ 2), and it has no physical operations in California.  (Lim Decl. ¶ 8.) BAM is a separate company, an independent licensee, and did not even exist at the time of the events at issue. (Lim Decl. ¶¶ 14, 15, 17.)

Because Plaintiff has not and cannot allege any sufficient basis for personal jurisdiction over Binance in California, the Complaint must be dismissed in its entirety.

## I.     THERE IS NO GENERAL PERSONAL JURISDICTION OVER BINANCE.

Plaintiff cannot meet his burden of establishing a *prima facie* case of general personal jurisdiction over Binance.  A court may assert "general jurisdiction over a foreign corporation only if the corporation's connections to the forum state 'are so "continuous and systematic" as to render it essentially at home in the forum State.'" *Williams* v. *Yamaha Motor Co.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S.

- 4 -

915, 919 (2011)).[3]  A plaintiff invoking general jurisdiction must meet an "exacting standard . . . because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger* v. *Fred Martin Motor Co.,* 374 F.3d 797, 801 (9th Cir. 2004).  The paradigmatic basis for general jurisdiction is when the corporation is incorporated or has its principal place of business in the forum state.  *See Daimler AG* v. *Bauman*, 571 U.S. 117, 137 (2014). "Only in an 'exceptional case' will general jurisdiction be available anywhere else."  *Ranza* v. *Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (quoting *Martinez*, 764 F.3d at 1070).

Here, Binance is neither incorporated nor has its principal place of business in California.  (Compl. ¶ 21; Lim Decl. ¶¶ 2, 4.)  Binance has no agent for service of process in California, does not hold a license to do business in California, does not maintain an office or mailing address in California, and does not have any physical operations in California.  (Lim Decl. ¶¶ 5–12.)  These facts are true today and were true throughout the time period relevant to the allegations in the Complaint.  (Lim Decl. ¶ 13.)

The conclusory allegations offered by Plaintiff—that Binance has conducted business and made its website available in California—fall well short of rendering Binance "essentially at home" for the purposes of conferring general personal jurisdiction.  *See Williams*, 851 F.3d at 1020 (quoting *Goodyear*, 564 U.S. at 919).  It is well established that substantial business contacts or relationships in the forum state do not give rise to general jurisdiction.  *See, e.g.*, *Ranza*, 793 F.3d at 1069 (finding no general jurisdiction where a foreign company had dozens of employees working at U.S. affiliate, averaged 47 trips per month to U.S. affiliate, and sold products in forum state's stores; these "business contacts" were "not pervasive enough to establish jurisdiction for *any* cause of action"); *Schwarzenegger*, 374 F.3d at 801 (holding that hiring California-based advertising and consulting services, in addition to maintenance of

---

[3]  "California's long-arm statute, Cal. Civ. Proc. Code § 410.10, is coextensive with federal due process requirements, so the jurisdictional analyses under state law and federal due process are the same." *Martinez*, 764 F.3d at 1066 (quoting *Mavrix Photo, Inc.* v. *Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)).

website accessible in California, were insufficient to confer general jurisdiction); *Bancroft & Masters, Inc.* v. *Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (holding that licensing agreements with television networks and vendors in California were insufficient to confer general jurisdiction), *overruled in part on other grounds by Yahoo! Inc.* v. *La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1207 (9th Cir. 2006) (en banc); *Adobe Sys. Inc.* v. *Trinity Software Distrib.*, No. C 12–1614 SI, 2012 WL 3763643, at *5 (N.D. Cal. Aug. 29, 2012) (holding that the use of an interactive website "along with relationships with California businesses falls far short of the exacting standard of general jurisdiction").  Accordingly, the mere assertion that Binance has conducted business in California—contrasted with Binance's evidence that it does not maintain a California presence—is plainly insufficient to satisfy the high bar for general personal jurisdiction.

## II.      THERE IS NO SPECIFIC PERSONAL JURISDICTION OVER BINANCE.

Plaintiff has also failed to meet his burden of establishing specific personal jurisdiction over Binance.  To adequately plead specific jurisdiction over a foreign defendant, a plaintiff must establish: (i) the defendant either purposefully directed its activities toward the forum or purposefully availed itself of the benefits afforded by the forum; (ii) the claim arises from the defendant's forum-related activities; and (iii) the exercise of jurisdiction is reasonable.  *See Williams*, 851 F.3d at 1023.  Plaintiff bears the burden of satisfying the first two prongs of the analysis.  *See Schwarzenegger,* 374 F.3d at 802.

*First*, "purposeful direction" requires that the defendant have committed an intentional act "expressly aimed" at the forum state, causing harm that the defendant knows is likely to be suffered in the forum state.  *Morrill* v. *Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).  By contrast, "purposeful availment" is typically an action by the defendant that invokes the benefits and protections of the laws in the forum state.  *See Pebble Beach Co.* v. *Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).  Neither purposeful direction nor purposeful availment is present here.  Plaintiff fails to identify any allegedly tortious conduct by Binance expressly aimed at California.  As discussed above, Binance is not registered to do business in California, and has no offices, books and records, or physical operations in California.  (Lim Decl. ¶¶ 5–12.)  Binance's alleged

conversion of Plaintiff's account occurred without Binance "entering California, contacting any person in California, or otherwise reaching out to California." *Picot* v. *Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015). In other words, "none of [Binance's] challenged conduct had anything to do with [California] itself." *Walden* v. *Fiore*, 571 U.S. 277, 289 (2014). And there are no allegations that Binance's course of dealing with Plaintiff evinced "some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Picot*, 780 F.3d at 1212 (quoting *Sher* v. *Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990)). Here, Plaintiff does not allege that that the parties negotiated or performed any contract in California.

The Complaint nonetheless alleges that, starting in 2017, "Binance purposefully directed its activities at residents of this forum by making its website, Binance.com, available to citizens of this state and providing a platform for United States customers to buy, sell and store digital assets on their Binance user account." (Compl. ¶ 23.) It is well settled, however, that the mere accessibility of an interactive website in the United States is not, standing alone, sufficient to make a foreign corporation subject to specific personal jurisdiction. *See Cybersell, Inc.* v. *Cybersell, Inc.*, 130 F.3d 414, 415 (9th Cir. 1997) (holding that "it would not comport with traditional notions of fair play and substantial justice" to exercise personal jurisdiction over a foreign defendant with no contacts in the forum state other than maintaining a home page that is accessible to everyone over the Internet (internal quotation marks omitted)); *DFSB Kollective Co.* v. *Bourne*, 897 F. Supp. 2d 871, 880–81 (N.D. Cal. 2012) (holding that an "interactive, commercial website" was insufficient to confer specific personal jurisdiction over a defendant in the absence of allegations that the defendant specifically targeted the relevant forum); *Matus* v. *Premium Nutraceuticals, LLC*, No. EDCV 15-01851 DDP (DTBx), 2016 WL 3078745, *3 (C.D. Cal. May 31, 2016) ("Absent 'something more' than the maintenance of a minimally interactive website, Plaintiff has not met its burden to satisfy even the purposeful availment prong of the specific jurisdiction test."). Because Plaintiff has demonstrated neither purposeful direction nor purposeful availment by Binance, he cannot satisfy the requirements for establishing specific jurisdiction in California.

1    *Second*, even if Plaintiff could establish purposeful direction or availment, the Complaint

2    fails to show that the claims arise out of any specific forum-related activities.  Specific

3    jurisdiction requires "a connection between the forum and the specific claims at issue." *Bristol-*

4    *Myers Squibb Co.* v. *Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773, 1781

5    (2017) (finding a lack of specific personal jurisdiction over pharmaceutical company where

6    nonresident plaintiffs were not prescribed prescription drug in California, did not purchase

7    prescription drug in California, and were not injured in California).  Under this prong, courts

8    consider whether a plaintiff's claims would have arisen "but for" the defendant's contact with the

9    forum.  *See Mehr* v. *Féderation Internationale de Football Assoc.*, 115 F. Supp. 3d 1035, 1051

10   (N.D. Cal. 2015).

11   No such connection exists here.  Plaintiff has made no allegation whatsoever that his

12   claims would not have arisen "but for" Binance's alleged activities in California.  There are no

13   allegations that Binance took any action in California with respect to Plaintiff or his account.

14   Indeed, Plaintiff asserts that he purchased the cryptocurrency at issue while residing in Oregon.

15   (Compl. ¶ 42.)  There is also no allegation that Plaintiff had any connection to California at the

16   time he sustained his alleged injury.  Plaintiff's alleged injury—the inability to access his

17   cryptocurrency—"is not tethered to California in any meaningful way." *Picot*, 780 F.3d at 1215.

18   Plaintiff "lacked access" to his funds not because of anything that independently occurred in

19   California. *Walden*, 571 U.S. at 290.  He would have experienced the same "lack of access" in

20   Oregon, Washington, or wherever else he might choose to live or travel. *Id.*  Thus, the

21   Complaint is devoid of plausible facts from which the Court can infer that Plaintiff was injured

22   in California as a result of Binance's alleged conduct.  Plaintiff has failed to meet his burden of

23   establishing that his claims arise out of Binance's purported contacts in California.

24   In the cryptocurrency context, courts have found, under analogous circumstances, that

25   dismissal for lack of specific personal jurisdiction is warranted where plaintiff fails to allege a

26   sufficient nexus to the forum state.  For example, in *Shaw* v. *Vircurex*, the plaintiff, a Colorado

27   resident, sought to bring a class action against the operators of a defunct cryptocurrency

28   exchange after it froze customer funds and the plaintiff was unable to withdraw his Bitcoin.

No. 18-cv-00067-PAB-SKC, 2019 WL 2636271 (D. Colo. Feb. 21, 2019).  After the defendants did not answer the complaint, the plaintiff moved for default judgment and the court *sua sponte* dismissed the case for lack of personal jurisdiction.  The plaintiff failed to allege any nexus between the alleged harm of the frozen account and any forum-specific activities by the defendant in Colorado.  "The only alleged connection between defendants and Colorado," the court observed, "is harm suffered by a Colorado resident.  More is required."  *Id.* at *4 (citing *Walden*, 571 U.S. at 290).[4]

Here, the case for dismissal here is even stronger than in *Shaw* because Plaintiff is not a resident of California.  Plaintiff has failed to allege any connection whatsoever between the alleged harm of suspending Plaintiff's account and Binance's alleged contacts with California.

*Finally*, under Plaintiff's theory, Binance would be subject to specific personal jurisdiction in any state where a user simply trades on its platform—even though the claims lack any substantial connection to the forum.  Such an expansive view of jurisdiction is patently unreasonable and violates "traditional notions of fair play and substantial justice" required by due process.  *Int'l Shoe Co.* v. *State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citing *Milliken* v. *Meyer*, 311 U.S. 457, 463 (1940)); *see also Doe* v. *Geller*, 533 F. Supp. 2d 996, 1009 (N.D. Cal. 2008) (Walker, J.) ("The Northern District of California is not an international court of internet law.").  Binance should not be subjected to personal jurisdiction in California where it does not "reasonably anticipate being haled into court there," *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297 (1980), and where California has no legitimate interest in adjudicating a dispute between two nonresidents with no connection to the state, see *Doe*, 553 F. Supp. 2d at 1008.  As the Supreme Court observed, "[c]onsidering the international context, the heavy burden on the alien defendant, and the slight interests of the plaintiff and the forum State, the exercise of personal jurisdiction by a California

---

[4]   *See also White* v. *Sharabati*, C.A. No. N18C-02-170 WCC, 2019 WL 2897913, at *2 (Del. Super. Ct. July 2, 2019) ("Defendant's use of a cryptocurrency trading platform incorporated in Delaware is not enough to bring him within the reach of this Court's jurisdiction.").

1    court over [the defendant] in this instance would be unreasonable and unfair." *Asahi Metal*

2    *Indus. Co., Ltd.* v. *Superior Court of California, Solano Cty.*, 480 U.S. 102, 116 (1987).

3    **III.    PLAINTIFF'S ALTER-EGO THEORY FAILS.**

4            In the absence of any plausible basis for personal jurisdiction over Binance in California,

5    Plaintiff has concocted an alter-ego theory seeking to leverage the fact that California is the

6    principal place of business for BAM.   (Compl. ¶¶ 21, 23.)   BAM is a separate legal entity,

7    however, that licenses the "Binance" name and certain technologies in the United States.   (Lim

8    Decl. ¶¶ 14, 17.)   Plaintiff's conclusory allegations are wholly insufficient to establish alter-ego

9    status.

10           "[T]he alter-ego test may be used to extend personal jurisdiction to a foreign parent or

11   subsidiary when, in actuality, the foreign entity is not really separate from its domestic affiliate."

12   *Williams*, 851 F.3d at 1021 (quoting *Ranza*, 793 F.3d at 1073).   To satisfy this test, a plaintiff

13   must make out a *prima facie* case (1) that there is such unity of interest and ownership that the

14   separate personalities of the two entities no longer exist and (2) that failure to disregard their

15   separate identities would result in fraud or injustice. *See Ranza*, 793 F.3d at 1073 (quoting *Doe*

16   v. *Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001)).   "Conclusory allegations of 'alter ego'

17   status are insufficient to state a claim.   Rather, a plaintiff must allege specifically both of the

18   elements of alter ego liability, as well as facts supporting each." *Neilson* v. *Union Bank of*

19   *California, N.A.*, 290 F. Supp. 2d 1101, 1116 (N.D. Cal. 2003) (citation omitted).

20           Considering that Binance has no direct or indirect ownership interest in BAM and does

21   not control BAM's day-to-day affairs, Plaintiff does not even come close to meeting the high

22   standard for establishing an alter-ego relationship.   (Lim Decl. ¶¶ 14, 21.)   Under the alter-ego

23   test, "[t]otal ownership and shared management personnel are alone insufficient to establish the

24   requisite level of control." *Ranza*, 793 F.3d at 1073.   The test "envisions pervasive control over

25   the subsidiary, such as when a parent corporation 'dictates every facet of the subsidiary's

26   business—from broad policy decisions to routine matters of day-to-day operation.'" *Id.* (quoting

27   *Unocal*, 248 F.3d at 926).   Indeed, "[a] parent corporation may be directly involved in financing

28

1  and macro-management of its subsidiaries . . . without exposing itself to a charge that each
2  subsidiary is merely its alter ego." *Unocal*, 248 F.3d at 927.

3  **A.    Unity-of-Interest Prong**

4  Here, Plaintiff fails to plead plausible facts supporting a "unity of interest" between the
5  two entities, relying instead on conclusory allegations that Binance controls BAM "upon
6  information and belief." (Compl. ¶ 23.)[5]  As publicly available documents show, BAM is a
7  separate legal entity incorporated in Delaware with its principal place of business in San
8  Francisco, California. (Lim Decl. ¶ 15.) Neither Binance nor BAM exercises control over the
9  other's day-to-day operations or management. (Lim Decl. ¶ 21.) As an independent licensee,
10 BAM is not authorized to act on behalf of Binance and does not legally bind Binance. (Lim
11 Decl. ¶ 21.) Given these sworn facts, Plaintiff has not shown—nor can it—that Binance controls
12 BAM "to such a degree as to render the latter the mere instrumentality of the former."
13 *Gardner* v. *Starkist Co*., 418 F. Supp. 3d 443, 462 (N.D. Cal. 2019) (citing *Ranza*, 793 F.3d at
14 1073).

15 Courts generally consider nine factors in assessing whether the unity-of-interest prong is
16 satisfied: (1) the commingling of funds and other assets of the entities; (2) the holding out by one
17 entity that it is liable for the debts of the other; (3) identical equitable ownership of the entities;
18 (4) use of the same offices and employees; (5) use of one as a mere shell or conduit for the
19 affairs of the other; (6) inadequate capitalization; (7) disregard of corporate formalities; (8) lack
20 of segregation of corporate records; and (9) identical directors and officers. *See Gardner*, 418
21 F. Supp. 3d at 462 (quoting *Sandoval*, 34 F. Supp. 3d at 1040).

22 Considering each of these factors, Plaintiff fails to meet his burden of demonstrating a
23 "unity of interest" between Binance and BAM:

24 1)    The Complaint does not allege that Binance and BAM's company assets or funds
25       are comingled. They are not. (Lim Decl. ¶ 22.)

26
27 ───────────────
   [5]  *See also Sandoval* v. *Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (rejecting conclusory
28 allegations "on information and belief" of a unity of interest between two corporate entities).

2)    The Complaint does not allege that Binance holds itself out as liable for the debts of BAM, or vice versa.  They do not.  (Lim Decl. ¶ 23.)

3)    The Complaint does not allege identical equitable ownership of the entities.

4)    The Complaint makes the conclusory allegation that "Binance, through Binance US, has significant operations, employees and physical presence in California." (Compl. ¶ 23.).  But this allegation is demonstrably untrue.  Binance does not maintain any offices, books and records, or physical operations in California where BAM is located.  (Lim Decl. ¶¶ 5, 8, 9.)

5)    The Complaint makes the conclusory allegation that BAM and Binance "use the same exchange platform, the same matching engine and the same wallet technologies."  (Compl. ¶ 23.)  To the extent BAM uses the same types of technologies, platforms, or matching engines, it is a function of BAM licensing technologies from Binance, and nothing more. (Lim Decl. ¶ 17.)  Standing alone, a licensing arrangement is insufficient to confer personal jurisdiction.  *See Bancroft*, 223 F.3d at 1086.  While BAM licenses the same types of technologies, it operates a distinct trading platform using a distinct matching engine.  (Lim Decl. ¶ 17.)

6)    The Complaint does not allege that BAM is inadequately capitalized.

7)    The Complaint makes the conclusory allegation that "Binance controls Binance US and uses Binance US as an agent and instrumentality to continue to serve Binance's United States customers."  (Compl. ¶ 23.)  To the contrary, BAM is not Binance's agent.  BAM licenses certain technologies from Binance as well as the name "Binance" in order for BAM to operate Binance US, a cryptocurrency exchange based in the United States that is independent of Binance.  (Lim Decl. ¶ 17.)

8)    The Complaint does not allege that there is a lack of segregation of corporate records between Binance and BAM.  Such an allegation would be false because Binance does not share books and records with BAM.  (Lim Decl. ¶ 18.)

9)      The Complaint does not allege that BAM and Binance have identical officers and

directors.  Although Binance and BAM share one director (Lim Decl. ¶ 24),

neither the officers nor the directors of the two companies are identical.  In any

event, the mere sharing of officers and directors "does not undermine the entities'

formal separation."  *Ranza*, 793 F.3d at 1074;  *see also Kramer Motors, Inc.* v.

*British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir.1980) (finding no alter-ego

relationship where parent and subsidiary had overlapping directors); *Gardner*, 418

F. Supp. 3d at 465 (same); *Corcoran* v. *CVS Health Corp.*, 169 F. Supp. 3d 970,

983–84 (N.D. Cal. 2016) (same).

In sum, Plaintiff has failed to specifically allege facts demonstrating an alter-ego relationship under this prong.  *See Gardner*, 418 F. Supp. 3d at 463–65.  Absent plausible factual allegations that Binance dominates the day-to-day operations of BAM, or that Binance would be unable to properly function without BAM, Plaintiff cannot meet his burden of establishing that BAM is an alter-ego subsidiary of Binance.  *See Ranza*, 793 F.3d at 1075; *see also Apple Inc.* v. *Allan Associates Ltd.*, No. 5:19-cv-8372-EJD, 2020 WL 1492665, at \*4–5 (N.D. Cal. Mar. 27, 2020).

The Ninth Circuit's decision in *Ranza* is particularly instructive.  There, the court considered an attempt to establish personal jurisdiction by attributing Nike's contacts in the forum state to its wholly-owned foreign subsidiary, NEON.  793 F.3d at 1070.  The court held, however, that the plaintiff failed to adequately plead the requisite unity of interest between the two entities, even where Nike was "heavily involved in NEON's operations," including exercising budgetary control, establishing human resource policies, and requiring some NEON employees to report to Nike supervisors.  *Id.* at 1074.  The court found that, despite this involvement, Nike's "macro-management" of its subsidiary was insufficient to pierce the corporate veil for purposes of extending jurisdiction.  *Id.* at 1074–75.

The present case is even stronger than *Ranza* because BAM is neither an agent nor subsidiary of Binance.  (Lim Decl. ¶¶ 14, 21.)   Binance also does not exercise control or management over BAM's day-to-day operations.  (Lim Decl. ¶ 21.)  BAM maintains its own books and records and place of business in San Francisco, California, and negotiates its own

1    contracts and licenses without any involvement by Binance.   (Lim Decl. ¶¶ 15, 18, 21.)

2    Ultimately, Binance's limited relationship with BAM "is insufficient to negate the formal

3    separation between the two entities such that they are functionally one single enterprise." *Ranza*,

4    793 F.3d at 1075.

5         **B.    Fraud-or-Injustice Prong**

6        Plaintiff does not even attempt to plead facts under the second prong of the alter-ego test

7    to show that failure to disregard the separate corporate identities "would result in fraud or

8    injustice." *Williams*, 851 F.3d at 1021.  This failure is independently fatal to his theory.  Absent

9    *any* allegation of fraud resulting from a failure to disregard the separation between Binance and

10   BAM, the alter-ego theory must fail on this prong, as well.  *See Gardner*, 418 F. Supp. 3d at 465;

11   *see also MH Pillars Ltd.* v. *Realini*, No. 15-CV-1383-PJH, 2017 WL 916414, at *14 (N.D. Cal.

12   Mar. 8, 2017).

13       Because Plaintiff offers nothing more than conclusory allegations about a purported

14   "unity of interest" between Binance and BAM, and because these assertions are demonstrably

15   false, this Court does not have jurisdiction over Binance based on its relationship with BAM.

16                            **<u>CONCLUSION</u>**

17       For these reasons, Binance respectfully requests that the Court dismiss Plaintiff's

18   Complaint in its entirety for lack of personal jurisdiction.

19

20   DATED:  June 18, 2020

21                                KEESAL, YOUNG & LOGAN

22                                By:/s/ Peter R. Boutin_____
                                  Peter R. Boutin
23                                Christopher A. Stecher

24                                PAUL, WEISS, RIFKIND, WHARTON & GARRISON
                                  LLP
25                                Theodore V. Wells (*pro hac vice pending*)
                                  Roberto J. Gonzalez (*pro hac vice pending*)
26                                Karen R. King (*pro hac vice pending*)

27                                *Attorneys for Specially Appearing Defendant Binance
                                  Holdings Ltd.*
28