UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVEN CODY REYNOLDS,

Plaintiff,

v.

BINANCE HOLDINGS LTD.,

Defendant.

Case No. 20-cv-02117-JSC

**ORDER RE MOTION TO DISMISS AND MOTION TO STAY**

Re: Dkt. Nos. 20 & 21

Steven Cody Reynolds brings claims of conversion, unjust enrichment, and negligence against Binance Holdings Limited alleging Binance unlawfully seized and confiscated his property in the form of cryptocurrency.[1]  Binance moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.  After consideration of the parties' briefing and having had the benefit of oral argument on August 13, 2020, for the reasons set out below the Court GRANTS Binance's motion to dismiss for lack of personal jurisdiction, and DENIES Mr. Reynold's request to conduct jurisdictional discovery.

## BACKGROUND

### A.  Complaint Allegations

Mr. Reynolds is a cryptocurrency investor who provides consulting services to companies in the digital currency industry.  (Dkt. No. 1 ("Complaint") ¶ 1.)[2]  He maintained a digital currency account with Binance, a global cryptocurrency exchange that provides a platform for buying, selling, and storing digital currencies.  (Id. ¶¶ 2-3.)  From July 2017 to December 2017, Binance retained Mr. Reynolds to support Binance's online communications with English-

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).  (Dkt. Nos. 6 and 14.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generate page numbers placed at the top of the documents.

speaking customers; Mr. Reynolds was compensated with "BNB tokens", or Binance coin, which he stored in his Binance account along with other cryptocurrencies.  (*Id.* ¶¶ 3-6.)  In December 2017, Mr. Reynolds stopped providing services to Binance.  (*Id.* ¶ 7.)  In January 2018, Binance contacted Mr. Reynolds, requesting he delete a group chat Mr. Reynolds maintained on a platform called Telegram Messenger; after deleting any reference to Binance from the chat, Mr. Reynolds was contacted by Binance's CEO, Changpeng Zhao, who insisted Mr. Reynolds delete the entire chat under threat of financial damages.  (*Id.* ¶¶ 9-10.)  Minutes after the phone call, "Binance unilaterally lowered Reynolds' withdrawal limit in his account to zero."  (*Id.* ¶ 10.)  Mr. Reynolds was prohibited from withdrawing any assets from his Binance account, even after attempting to restore his account through Binance's customer service program.  (*Id.* ¶ 12.)  At the time, Mr. Reynolds had approximately $285,000 of digital currencies in the account.  (*Id.* ¶ 13.)  When Mr. Reynolds regained access to his account on or about March 31, 2018, he discovered his account balance was $0.  (*Id.* ¶ 14.)  Mr. Reynolds alleges that his account's digital currencies "could have sold . . . in an amount up to $337,500" over the subsequent months.  (*Id.* ¶ 16.)

### B.  Procedural Background

Plaintiff filed the complaint on March 27, 2020.  (*See* Dkt. No. 1.)  On June 18, 2020, after the parties stipulated to an extension of time for Binance to respond to Plaintiff's complaint, Binance moved to dismiss the complaint and stay discovery.  (Dkt. Nos. 20 and 21.)  The motions are fully briefed, and came before this Court for hearing on August 13, 2020.  (*See* Dkt. Nos. 29, 30, 35, 36.)

## DISCUSSION

Binance moves to dismiss on the grounds that the Court does not have personal jurisdiction over Binance, nor is Binance U.S. ("BAM") an alter ego whose conduct or presence in California provides sufficient bases for subjecting Binance to the Court's personal jurisdiction.

### I.  Request for Judicial Notice

Pursuant to the Federal Rules of Evidence, courts may judicially notice an adjudicative fact if it is not subject to reasonable dispute because it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

United States District Court
Northern District of California

accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Plaintiff requests judicial notice of thirty documents, twenty-eight of which are online news articles or excerpts from various websites.  Regarding these news articles and websites, "a court may take judicial notice of publicly available newspaper and magazine articles and web pages that indicate what was in the public realm at the time, not whether the contents of those articles were in fact true." *Tarantino v. Gawker Media*, LLC, No. CV 14-603-JFW FFMX, 2014 WL 2434647, at *1 (C.D. Cal. Apr. 22, 2014) (citing *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010)) (internal quotations omitted); *see also Bruce v. Chaiken*, No. 215CV00960TLNKJN, 2019 WL 645044, at *1 (E.D. Cal. Feb. 15, 2019) ("While [a court] may take judicial notice of the fact that the internet, Wikipedia, and journal articles are available to the public, it may not take judicial notice of the truth of the matters asserted therein.").  Therefore, the Court may not take judicial notice of the facts contained in the articles.  *See Bruce*, 2019 WL 645044, at *1.  Regarding the remaining two documents that are filed with the California Secretary of State and Department of Treasury, these documents are appropriate subjects of judicial notice.  *See, e.g., Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts.") (internal citation omitted).

## II.      Rule 12(b)(2) Motion

On a defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the exercise of personal jurisdiction over the defendant is proper.  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).  California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution.  *See Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Cal. Code Civ. Proc. § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").  California's jurisdictional statute is

United States District Court
Northern District of California

3

1    coextensive with federal due process requirements, and thus the jurisdictional analysis is the same.

2    *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-801 (9th Cir. 2004).

3         There are two categories of personal jurisdiction: general and specific.  *Bristol-Meyers*

4    *Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017).  Because Mr. Reynolds does not

5    argue that Binance is subject to specific personal jurisdiction, the Court considers Mr. Reynold's

6    arguments in turn regarding Binance's exposure to general personal jurisdiction and its status as

7    BAM's alter ego.

8         **A.  General Personal Jurisdiction**

9         A court has general personal jurisdiction over a corporate defendant in a forum where "the

10   corporation is fairly regarded as at home."  *Daimler*, 571 U.S. at 137 (quoting *Goodyear Dunlop*

11   *Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  General jurisdiction over a

12   corporation is appropriate only in the forum where the corporation is incorporated or has its

13   principal place of business, or in exceptional cases where the corporation's contacts with the

14   forum state are "so constant and pervasive as to render [it] essentially at home in the forum State."

15   *Id.* at 122 (quoting *Goodyear*, 564 U.S. at 919).  Merely engaging "in a substantial, continuous,

16   and systematic course of business" in a forum is insufficient for a court to exercise general

17   personal jurisdiction over the defendant in that forum.  *Id.* at 138-139.

18        Mr. Reynolds has not met his burden of showing that the exercise of general personal

19   jurisdiction over Binance is proper.  He argues that California is Binance's principal place of

20   business because "there is no other more suitable place," and that this makes Binance's

21   decentralized organization the "exceptional case" *Daimler* contemplated.  (Dkt. No. 29 at 17.)

22   However, taking the substance of a defendant's *operations* in a forum as the basis for determining

23   its suitability as the defendant's principal place of business misstates the inquiry; the Supreme

24   Court has rejected similar calls for standards beyond those laid out in *Goodyear* when setting the

25   boundaries of courts' jurisdictional reach.  *See Daimler*, 571 U.S. at 137-38 (rejecting the exercise

26   of general jurisdiction over corporations in states where they "engage[] in a substantial,

27   continuous, and systematic course of business" as an "unacceptably grasping" formulation)

28   (internal quotations and citations omitted).  Simply put, Mr. Reynolds fails to demonstrate that

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   Binance is incorporated or has its principal place of business in California, and an argument that

2   the substance of its operations or business within the state constitutes an "exceptional case" cannot

3   serve as a basis for circumventing *Daimler*'s bedrock principle: that the inquiry is not whether a

4   foreign corporation's in-forum contacts can be said in some sense to be "continuous and

5   systematic," but rather if the "corporation's *affiliations with the State* are so 'continuous and

6   systematic' as to render [it] essentially at home in the forum State." *Id.* at 138-139 (internal

7   quotations and citation omitted) (emphasis added).

8          Binance's lack of any headquarters does not make California its jurisdictional home, and

9   has Mr. Reynolds has failed to identify any other facts, alleged or otherwise, that would make this

10  case exceptional under *Daimler* and place Binance "at home" in California.  While Mr. Reynolds

11  argues that the majority of Binance's customers are in the United States, that Binance moved its

12  cloud operations and servers to Amazon Web Services from China, and that Binance has "invested

13  in and partnered with numerous companies in this forum," (*see* Dkt. No. 29 at 17-18), these facts

14  are simply illustrative of Binance's in-forum contacts.  They do not illustrate that Binance has the

15  requisite affiliations with California to be essentially at home in the state and subject to general

16  jurisdiction in it.  *See Daimler*, 571 U.S. at 138-139.

17         Accordingly, Mr. Reynolds has not met his burden of showing that the exercise of general

18  personal jurisdiction over Binance is proper.

19         **B.  Alter-Ego Relationship**

20         In the complaint, Mr. Reynolds alleges that, upon information and belief, BAM is

21  Binance's alter ego subsidiary because there is a "unity of interest, ownership and control"

22  between them such that their separate personalities no longer exist.  (Complaint ¶ 23.)  However, a

23  parent-subsidiary relationship does not on its own establish two entities as alter egos—"general

24  jurisdiction over one does not give rise to general jurisdiction over the other." *Williams v.*

25  *Yamaha Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (internal quotations and citations

26  omitted).  To satisfy the "alter ego test" and extend personal jurisdiction to a foreign parent or

27  subsidiary on the basis of the in-forum entity's contacts, it is a plaintiff's burden to make out a

28  prima facie case showing "(1) that there is such unity of interest and ownership that the separate

personalities of the two entities no longer exists and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* (citing *Ranza v. Nike*, 793 F.3d 1059, 1073 (9th Cir. 2015)).

### 1. Unity of Interest

The "unity of interest" theory "envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Ranza*, 793 F.3d at 1073 (internal quotations and citations omitted). A parent's "substantial" involvement in the subsidiary's activity is insufficient "to negate the formal separation between the two entities" for jurisdictional purposes—a parent must be involved in a subsidiary's routine day-to-day operations such that there is a failure of the entities to observe their separate "corporate formalities." *Id.* at 1075. Disregarding the corporate entity is recognized as an "extreme remedy," and courts will only pierce the corporate veil in "exceptional circumstances." *Gonzalez v. Drew Indus. Inc.*, 2008 WL 11338569, at *1 (C.D. Cal. Apr. 1, 2008) (quoting *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)).

When considering entities' unity of interest, relevant factors include "the commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *MH Pillars Ltd. v. Realini*, No. 15-CV-1383-PJH, 2017 WL 916414, at *12 (N.D. Cal. Mar. 8, 2017) (internal quotations and citations omitted).

Mr. Reynolds alleges that: Binance controls BAM and uses BAM as an "agent and instrumentality" to serve Binance's U.S. customers, to ensure compliance with U.S. regulations, and to serve as Binance's principle physical presence in the U.S.; that Binance and BAM operate on the same website, use the same exchange platform, the same matching engine and same wallet technologies; and that, through BAM, Binance has "significant operations, employees, and [a] physical presence in California." (Complaint ¶ 23.) To sufficiently allege a theory of alter ego,

6

however, a plaintiff must offer more than labels and conclusions—"factual allegations must be enough to raise a right to relief above the speculative level." *Hoang v. Vinh Phat Supermarket, Inc.*, No. CIV. 2:13-00724 WBS, 2013 WL 4095042, at \*14 (E.D. Cal. Aug. 13, 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 2007)).  Additionally, a plaintiff must explain how factual allegations are applicable to the alter ego analysis. *See NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHKHRL, 2015 WL 400251, at \*6 (N.D. Cal. Jan. 29, 2015) ("As a preliminary matter, [the plaintiff] fails to explain how several of its [factual] allegations . . . are relevant to the eight factors in the unity of interest and ownership inquiry . . . [The plaintiff] does not otherwise explain how these alleged facts are applicable.").

Here, Mr. Reynolds offers only the conclusory statement that Binance and BAM have a unity of interest, and fails to explain how, under the unity of interest factors, the complaint's factual allegations are applicable to the eight-factor inquiry. (*See* Complaint ¶ 23.)  However, Mr. Reynolds marshals three facts in his opposition that he claims demonstrate a "unity of interest" between Binance and BAM: Binance's CEO and CFO sit on BAM's three-member Board of Directors, and Binance's CFO serves additionally as BAM's CFO; BAM's reported address is the same as Koi Trading Systems, Inc. ("Koi Trading"), a company in which Binance invested, meaning that BAM was working "out of an office belonging to a company owned in whole or part by Binance[;]" and that Binance and BAM operate on the same website, use the same wallet technology, matching engine, and trading platform.  (Dkt. No. 29 at 19-20.)   The Court in turn considers the unity of interest factors under these facts.

### a.  Binance Executives

The placement of Binance executives on BAM's Board of Directors speaks to the factor regarding identical directors and officers.  As "total ownership and shared management personnel are alone insufficient to establish the requisite level of control," placement of "[a parent's] directors on the subsidiary's board" does not singularly create an alter-ego relationship.  *Ranza*, 793 F.3d at 1074-75 (internal quotations and citations omitted).  *See also Gardner v. Starkist Co*., 418 F. Supp. 3d 443, 463 (N.D. Cal. 2019); *Stewart v. Screen Gems-EMI Music, Inc*., 81 F. Supp. 3d 938, 956 (N.D. Cal. 2015) ("[I]t is well-settled that common ownership is not dispositive.")

United States District Court
Northern District of California

(citations omitted).  Therefore, that Binance and BAM share board members and a CFO does not on its own sufficiently establish a unity of interest.  *See Apple Inc. v. Allan & Assocs. Ltd.*, No. 5:19-CV-8372-EJD, 2020 WL 1492665, at *5 (N.D. Cal. Mar. 27, 2020) ("In the absence of evidence of actual control, courts generally presume that directors can and do 'change hats' to represent each corporation separately.") (citations omitted).  However, the Court notes that two of BAM's three Board directorships are held by Binance executives, (*see* Dkt. 29 at 6), and that, while common ownership is not dispositive, *see Stewart*, 81 F. Supp. 3d at 956, in the presence of other factors that offer evidence of actual control this fact leans toward the finding of an alter ego relationship.

### b.  Shared Business Address with Koi Trading

Regarding BAM's shared business address with Koi Trading, this fact is insufficient to demonstrate the entities' requisite unity of interest.  *See MH Pillars Ltd.*, 2017 WL 916414, at *12 ("[P]laintiffs have alleged no facts sufficient to show a unity of interest[,]" including the allegation that "[some Defendants] had the same business address and the same agent for service of process[.]").  As such, BAM's registration at the Koi Trading address does not give rise to the unity of interest Mr. Reynolds bears the burden of illustrating.[3]  Turning to the first prong's factors, Binance's *investment* in Koi Trading as a "Portfolio" company, (Dkt. No. 29 at 14), does not demonstrate that Binance *itself* was using the same offices and employees as BAM, nor has Mr. Reynolds pleaded anything beyond the fact of this investment that would show BAM's shared office with Koi Trading disregarded its corporate formalities with Binance.  As such, BAM's registration at the same address as Koi Trading does not weigh in favor of finding alter ego

---

[3] Even if this Court accepts as true the factual supplements in Plaintiff's clarification to his request for judicial notice, the clarification's supplements do not add more to the facts offered in Plaintiff's opposition.  Taking as true that Binance invested $3,000,000.00 into Koi Trading, and entertaining that this constituted a near-total ownership interest in Koi Trading, 100% control through stock ownership "does not by itself make a subsidiary the alter ego of the parent." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).  It follows that—no matter Binance's ownership interest in Koi Trading—this ownership interest alone is insufficient to make Koi Trading a subsidiary of Binance, thus further attenuating any possible argument that Binance's ownership interest in Koi Trading, and BAM's shared address with Koi Trading, creates any unity of interest between BAM and *Binance* under the alter-ego theory.  (*See* Dkt. No. 29, Exs. 14, 19, and 22.)

United States District Court
Northern District of California

1    liability, and fails on its own to satisfy any factor under test's first prong.

2              **c.   Web Platforms and Technologies**

3              Regarding Mr. Reynolds's claim that Binance and BAM operate on the same website,

4    wallet technology, matching engine, and trading platform—as well as that Binance "actively

5    markets and advertises [BAM] on its website and on twitter"—Binance counters that Mr.

6    Reynolds offers no support for this claim, and that moreover it is controverted by the declaration

7    of Samuel Lim.[4]  (Dkt. No. 35 at 15.)  As a preliminary matter, when confronted with entities'

8    shared websites in the alter ego context, courts have held this does not reflect an "abuse of the

9    corporate form and existence of an alter ego relationship."  *Gerritsen v. Warner Bros. Entm't Inc.*,

10   116 F. Supp. 3d 1104, 1139 (C.D. Cal. 2015); *see also NetApp, Inc.*, 2015 WL 400251, at *7 ("In

11   addition, the allegation that [entities] share a website and email is an administrative . . .  function.

12   Shared administrative functions are not necessarily indicative of an alter ego relationship.")

13   (citation omitted).  Moreover, separate corporate entities presenting themselves "as one online

14   does not rise to the level of unity of interest required to show companies are alter egos."

15   *Corcoran*, 169 F. Supp. 3d at 984; *see also Moody v. Charming Shoppes of Delaware, Inc.*, 2008

16   WL 2128955, at *3 (N.D. Cal. May 20, 2008) ("[g]eneric language on [company's] website . . .

17   simply do[es] not rise to the day-to-day control required to impute the subsidiary's contacts to the

18   parent"); *Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911, at *3 (N.D. Cal. July 30, 2015)

19   (website "marketing puffery carries *no weight* in establishing whether a parent and its subsidiary

20   are in fact alter egos") (emphasis added).

21             Mr. Lim declares that Binance does not maintain a direct or indirect ownership interest in

22   BAM, and that, while Binance licenses the "Binance" name and select technologies to BAM,

23   "BAM operates a distinct trading platform using a distinct matching engine."[5]  (Dtk. No. 20-1

24   _____

25   [4] The Court may consider declarations when analyzing a motion under Rule 12(b)(2) because Rule
     12(b)(2) and Rule 12(b)(6) are different motions.  *See Apple Inc.*, 2020 WL 1492665, at *6
26   (distinguishing Rule 12(b)(2) and Rule 12(b)(6) as "different inquiries[,]" and considering a
     declaration over the plaintiff's objection in analyzing a Rule 12(b)(2) motion to dismiss.); *see also*
27   *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (courts may
     consider evidence presented in affidavits and declarations in determining personal jurisdiction).
28   [5] Even taking as true that Binance advertised and marketed BAM on its website and Twitter, this
     fact does not support a finding of alter-ego liability. *See Apple Inc.*, 2020 WL 1492665, at *6

United States District Court
Northern District of California

("Lim Decl." or "Lim Declaration") at ¶¶ 14, 17.)  Mr. Lim additionally declares that Binance does not exercise control over "BAM's day-to-day operations and affairs," (*Id*. ¶ 21), further supporting the formal distinctions between the two entities.[6]  *See Ranza*, 793 F.3d at 1075.  These statements serve as further evidence that Binance and BAM are not alter egos, and foundationally that Mr. Reynolds has not met his burden in showing that Binance and BAM hold a unity of interest.  *See Apple Inc.*, 2020 WL 1492665, at *6 (using an unrebutted declaration to find entities were not alter egos).  Thus, given the Lim Declaration and administrative nature of the entities' website and trading platforms, the Court finds that the facts regarding the entities' websites and technological platforms do not weigh in favor of finding alter-ego liability.

### d.  Other Unity of Interest Factors

Ultimately, Mr. Reynolds alleges insufficient facts to demonstrate a unity of interest between Binance and BAM.  As a result, he has not met his burden in showing that there is a unity of interest between Binance and BAM.  *See Williams*, 851 F.3d at 1021.  Only one of Mr. Reynolds's alleged facts supports a finding of alter-ego liability under the first prong's factors: that two of BAM's three directors are Binance executives, which demonstrates the two share some identical directors and officers.  *See MH Pillars*, 2017 WL 916414, at *12.  Mr. Reynold's other facts—that BAM shares an address with Koi Trading, and that BAM and Binance share web platforms—do not, for the reasons outlined above, satisfy any factors used to evaluate entities' unity of interest.

Furthermore, Mr. Reynolds leaves multiple factors under the unity of interest prong unaddressed—for example, whether the entities' funds were commingled, whether one held itself out as liable for the debts of the other, whether one was a "mere shell or conduit for the affairs of the other," inadequate capitalization, disregard for corporate formalities, and segregation of

---

(finding the allegation that one LinkedIn post's treatment of two entities as the same company and the redirection of one entity's website to another did not establish alter-ego liability).

[6] Mr. Reynolds' opposition to Binance's motion mentions the Lim Declaration twice: once as a document that fails to demonstrate where Binance maintains its principal place of business, and later as evidence of the overlap of identical board members between Binance and BAM.  (*See* Dkt. No. 29 at 5, 13.)  Plaintiff leaves the Lim Declaration's points regarding Binance's ownership interest in BAM—as well as use of different trading platforms—unrebutted.

United States District Court
Northern District of California

1  corporate records. *See MH Pillars*, 2017 WL 916414, at *12.  A plaintiff's failure to discuss a

2  unity of interest factor weighs against the finding of alter ego liability.  *See Stewart*, 81 F. Supp.

3  3d at 955-956.  The Lim Declaration also states—and Mr. Reynolds not contrarily allege in the

4  complaint—that: Binance's assets and funds are not commingled with BAM; Binance does not

5  hold itself out as liable for the debts of BAM, or vice versa; and that Binance does not share

6  corporate records with BAM.  (Lim Decl. ¶¶ 18, 22-23.)  The only contrary statement Mr.

7  Reynolds offers to the Lim Declaration's assertions that Binance does not maintain an office or

8  physical operation in California, (*Id.* ¶¶ 5, 7-8), is in the complaint's deficiently conclusory

9  allegation that Binance has significant operations and a physical presence in California.

10  (Complaint ¶ 23).  Similarly, Mr. Reynolds's allegation that BAM is an "agent and

11  instrumentality" of Binance is belied by Mr. Lim's statements that BAM only licenses the Binance

12  name for its operations, that BAM is otherwise a "distinct trading platform," and that Binance did

13  not exercise control over BAM's day-to-day operations.   (Lim Decl. ¶¶ 17, 21.)[7]

14       While some courts have held that as few as two satisfied factors may support the finding of

15  a unity of interest, *see Pacific Maritime Freight, Inc. v. Foster,* 2010 WL 3339432, at *6 (S.D.

16  Cal. Aug. 24, 2010), the number of Binance executives sitting on BAM's Board of Directors does

17  not itself give rise to alter-ego liability in light of Mr. Reynolds' unaddressed factors, facts offered

18  in the opposition that do *not* weigh in favor of finding unity of interest, and the Lim Declaration.

19       Mr. Reynolds has failed to meet the prima facie burden regarding any unity of interest

20  between Binance and BAM.  *See Williams*, 851 F.3d at 1021. Therefore, because both prongs of

21  the alter ego test must be satisfied, Binance is not subject to personal jurisdiction as BAM's alter

22  ego.

23

24

25  [7] Mr. Reynolds cites an interview with BAM's CEO in which she does not answer directly
    whether Binance's CEO has any ownership interest in BAM.  (Dkt. Nos. 29 at 13-14; 32, Ex. 27).
26  Even if the Court draws an inference from her evasive answer that Binance's CEO might have an
    ownership interest in BAM, that does not support an inference that *Binance* has an ownership
27  interest in BAM.  And, even if it did support such inference, it is contradicted by the Lim
    Declaration, stating that "Binance does not have a direct or indirect ownership interest in BAM,
28  and BAM is not a subsidiary in Binance."  (Lim Decl. ¶ 14.)

1

United States District Court
Northern District of California

## 2. Fraud or Injustice

Where a plaintiff fails to satisfy the "unity of interest" prong, a court need not analyze the "fraud or injustice prong." *Ranza*, 793 F.3d at 1075 n.9 (citation omitted). Furthermore, Mr. Reynolds did not plead this prong in the complaint, and raises it instead in his opposition to Binance's motion to dismiss. As in *Gardner*, 418 F. Supp. 3d at 465, where nothing in plaintiffs' first amended complaint made mention of a "possible inequitable result" under this prong, the Court need not consider Plaintiff's arguments in his opposition. *Id.* (stating "StarKist is properly before the court to answer plaintiffs' allegations[,]" and disregarding the mention of "fraud or injustice" in plaintiffs' opposition brief to defendant's motion to dismiss because "[n]othing in the [first amended complaint] mention[ed] a possible inequitable result."); *see also Park Miller, LLC v. Durham Grp., Ltd.*, No. 19-CV-04185-WHO, 2020 WL 1955652, at *14 (N.D. Cal. Apr. 23, 2020) (requiring plaintiffs to "allege *specifically both* of the elements of alter ego liability, as well as facts supporting each" and finding a plaintiff's second amended complaint was deficient for its failure to "state any inequitable result that would result from respecting the corporate form of [] separate entities") (citation omitted) (emphasis in original).

However, even if this Court considered the argument in Mr. Reynold's opposition, he has not established that an inequitable result would follow from a failure to disregard the separate identities between Binance and BAM. *See Ranza*, 793 F.3d at 1073. The alter ego test's second prong requires that a plaintiff "plead facts sufficient to demonstrate that conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp. 3d 1061, 1082 (N.D. Cal. 2019) (citing *Prod. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-CV-00669-YGR, 2017 WL 201703, at *8 (N.D. Cal. Jan. 18, 2017)); *see also Stewart*, 81 F. Supp. 3d at 963 ("To establish inequity in the absence of alter ego liability, a plaintiff must plead facts sufficient to demonstrate that conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.") (internal quotations and citations omitted). Mr. Reynolds has not done so.

Mr. Reynolds argues that the failure to disregard the separate identities of Binance and

1   BAM will result in a fraud and injustice to Mr. Reynolds and other investors whose

2   cryptocurrency is stored with Binance or BAM "who will be subject to loss of their funds"

3   through Binance's intentional acts or negligence.  (Dkt. No. 29 at 20.)  Evidence of *past* fraudulent

4   conduct or injustice is necessary to support a finding of alter ego liability.  *See Seymour v. Hull &*

5   *Moreland Eng'g*, 605 F.2d 1105, 1112–13 (9th Cir. 1979) (holding that plaintiffs did not satisfy

6   the alter ego test's second prong because "there was no evidence of any "fraudulent intent in

7   forming the corporation," and that "no evidence of bad faith or fraudulent intent in forming the

8   corporation was presented.").  Mr. Reynold's argument that he and other investors face potential

9   exposure to Binance's future conduct does not establish the requisite history of bad faith conduct

10  to satisfy the test's second prong.  Courts have rejected similar, conjectural assertions of bad faith

11  conduct under the alter-ego test's second prong.  *See, e.g.*, *Stewart*, 81 F. Supp. 3d at 956

12  ("Plaintiff's insistence that the inequitable result of failing to assert personal jurisdiction over [the

13  entities] is the *potential* for the continued unfair billing conduct alleged . . . misses the mark.");

14  *Gerritsen*, 116 F. Supp. 3d at 1145 (rejecting the plaintiff's argument that failure to pierce the

15  corporate veil would permit defendants to leave the plaintiff "without a remedy" and "sanction a

16  fraud" did not satisfy the second prong because these allegations did not support a plausible

17  inference that an entity actually engaged in bad faith conduct to avoid liability).  The Court finds

18  this reasoning persuasive.  As such, Mr. Reynolds has failed to meet his burden in showing any

19  conduct that would make it inequitable for this Court to observe the corporate distinction between

20  Binance and BAM.

21  **II.    Jurisdictional Discovery**

22          Mr. Reynolds requests this Court permit jurisdictional discovery.  A district court has

23  discretion in permitting a plaintiff to conduct jurisdictional discovery.  *See Wells Fargo & Co. v.*

24  *Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).  A plaintiff's request for

25  jurisdictional discovery should "be granted where pertinent facts bearing on the question of

26  jurisdiction are controverted . . .  or where a more satisfactory showing of the facts is necessary."

27  *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (internal

28  quotations and citations omitted); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir.

United States District Court
Northern District of California

13

United States District Court
Northern District of California

1   2008) (holding that jurisdictional discovery "may be appropriately granted where pertinent facts

2   bearing on the question of jurisdiction are controverted or where a more satisfactory showing of

3   the facts is necessary.").  Discovery should be denied where it would "not demonstrate facts

4   sufficient to constitute a basis for jurisdiction."  *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080,

5   1093 (9th Cir. 2003) (internal quotations and citations omitted).  Similarly, where a plaintiff's

6   claim "of personal jurisdiction appears to be both attenuated and based on bare allegations in the

7   face of specific denials made by defendants, the Court need not permit even limited discovery."

8   *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citations omitted).

9          Here, Mr. Reynolds' bare allegations are insufficient to justify jurisdictional discovery.

10  While courts have permitted jurisdictional discovery in the alter ego context, *see, e.g.*, *Myhre v.*

11  *Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc.*, 298 F.R.D.

12  633, 645 (S.D. Cal. 2014), courts in this context have also required that plaintiffs offer some

13  details "supporting [their] assertion[s] that discovery" will establish facts showing defendants are

14  subject to the court's jurisdiction, *Yagman v. Kelly*, No. CV176022MWFPJWX, 2018 WL

15  2138461, at *9 (C.D. Cal. Mar. 20, 2018).  This requirement comports with the Ninth Circuit's

16  reasoning that where a plaintiff's request for discovery is based on "little more than a hunch that it

17  might yield jurisdictionally relevant facts," its denial is within the district court's discretion.

18  *Boschetto*, 539 F.3d at 1020 (citation omitted).

19         Mr. Reynolds asks this Court to grant him permission to conduct jurisdictional discovery

20  regarding "the disputed facts and in order to amend its complaint to provide further support for its

21  allegations."  (Dkt. No. 29 at 20.)  In his response to Binance's motion to stay, Mr. Reynolds

22  states that Binance provides "no supporting evidence that [BAM] is a mere licensee of the

23  technology without any control from [Binance]," and that, as such, this entitles him to

24  jurisdictional discovery.  (Dkt. No. 30 at 10.)  However, the Lim Declaration attests that "BAM is

25  an independent licensee" of Binance.  (Lim Decl. ¶ 21).  Taken together, these two requests fail to

26  offer any details supporting the assertion that discovery will establish facts supporting this Court's

27  jurisdiction over Binance under Plaintiff's alter-ego theory.  *See Yagman*, 2018 WL 2138461, at

28  *9.  In fact, simply stating that facts are disputed and Binance offers insufficient evidence for one

14

of its arguments does not assert that discovery will yield relevant facts at all.  Mr. Reynolds'

argument that there are disputed facts and that Binance offers no supporting evidence for one of its

contentions, the Lim Declaration notwithstanding, does not mean that he has offered details

justifying jurisdictional discovery.  To the contrary, Mr. Reynolds offers no more than a hunch

that discovery would yield jurisdictionally relevant facts, *see Boschetto*, 539 F.3d at 1020,

especially in light of Binance's specific denials, *see Terracom*, 49 F.3d at 562.

**CONCLUSION**

As there is no general personal jurisdiction over Binance, and Mr. Reynolds has not

alleged sufficient facts to show that BAM is Binance's alter ego, Binance's motion to dismiss for

lack of personal jurisdiction is GRANTED.  Even considering the arguments Mr. Reynolds raises

for the first time in his opposition to Binance's motion to dismiss and the evidence that is not

judicially noticeable, leave to amend the complaint to attempt to allege facts that support general

jurisdiction would be futile.  This dismissal is without prejudice to Mr. Reynolds bringing his

claims in a jurisdiction with personal jurisdiction over Binance.

This Order disposes of Dkt. Nos. 20 and 21.

**IT IS SO ORDERED.**

Dated: August 26, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge